[Sac. No. 2731.   Department Two.—January 4, 1919.]

## N. W. FRIEDMAN et al., Appellants, v. McKAY LEATHER COMPANY (a Corporation), Respondent.

AGENCY CONTRACT—WHEN NOT EXCLUSIVE—DAMAGES FOR BREACH.—An agency contract providing for commissions on sales actually made is not an exclusive agency contract, wherein upon breach by the principal the measure of damages is that applicable to exclusive agency contracts, where the sales were not only dependent upon the effort put forth by the agent, but also upon the number of other agents in the field competing with such agent and the condition of the market.

ID.—EXCLUSIVE CONTRACT—MEASURE OF DAMAGES.—The measure of damages to which the exclusive agent is entitled where the principal, in violation of his contract, sells his goods in the agent's territory, is the actual loss suffered by the latter, and that ordinarily is the commission which would have accrued to him if he had made the sale in person, and speculative damages are not recoverable.

ID.—BREACH OF NONEXCLUSIVE AGENCY CONTRACT — COMMISSIONS ON SUPPOSITIVE SALES.—Where an agency contract providing for commissions is not exclusive, the agent upon breach by the principal, cannot recover as damages profits to be realized as commissions on purely suppositive sales, the same being speculative.

ID.—COMMISSIONS ON SALES TO DEALERS.—Where an agency contract provides for commissions on sales to certain named dealers whether made directly or by reason of the agency, commissions on actual sales made to such dealers, whether made by the agent or otherwise, may be recovered in an action for breach of the contract by the principal, the same being certain and not speculative.

APPEAL from an order of the Superior Court of Solano County granting a new trial. W. T. O'Donnell, Judge. Affirmed.

The facts are stated in the opinion of the court.

T. T. C. Gregory, D. Hadsell, and Thos. A. Allan, for Appellants.

Frank McGowan, Arthur Lindauer, and Blaine McGowan, for Respondent.

WILBUR, J.—Appellants claim that this is an action for a breach of contract, but the respondent claims it is an action for an accounting. Respondent demanded a jury and appellants recovered judgment after verdict, the respondent's motion for a new trial was granted, and the appeal is from this order. The parties entered into a contract by which the respondent appointed the appellants "its representatives" for the "handling" of leather, agreeing to pay a commission "on all orders placed through" appellants "or received direct from" sixteen "factories, finding houses," and "commission houses on the Pacific Coast," specifically named in the contract. Respondent also agreed to pay commissions on all "orders booked" by respondent for shoe factories, etc., on the Pacific Coast or in the Orient. Respondent also agreed to consult with appellants "at regular intervals regarding preparation of leather, selections, prices and the booking of orders as regards quantities"; to mail appellants copies of invoices; to pay commissions monthly; to furnish samples from time to time as requested; to keep appellants posted regarding any change in prices. The contract was for a term of four years, with an option on the part of respondent to renew the agreement for "a further term of five years." There was no agreement by the appellants to devote their time, or any part of it, to the selling of the leather goods of the respondent. The complaint alleges that orders had been received by respondent direct from the shoe-houses, etc., named in the agreement, and that it had failed to render an accounting to appellants therefor, and had failed to mail invoices therefor, or to pay commissions thereon, after demand; that on June 26, 1914, respondent notified appellants that it would not pay past or future commissions "on direct orders as provided in the agreement or at all"; that appellants had been ready, able, and willing to perform the contract, and "unless prevented by the repudiation" thereof by respondent, would have secured a large number of orders during the term of the contract, to wit, to February 26, 1918; "that by reason of the facts hereinbefore set forth" appellants have been damaged in the sum of ten thousand dollars and prayed judgment for said amount. The answer specifically denies each alleged violation of the agreement, and denies that the appellants had been at all damaged. The following letter of June 26, 1914,

from respondent to appellants, is counted on as evidence of the breach of contract: "We found you to be a failure as a salesman and detrimental to our business. . . . You went out in competition to us and sold another tanner's leather to our trade. . . . We don't want you to represent us and we certainly will not pay you for what we ourselves sell. . . . Are we to send you a check and you not make any effort to do anything for it? You want to come back on us for commission on trade we had before we ever knew you," etc. On July 6, 1914, appellants wrote respondent that an agent of one of the dealers mentioned in the commission agreement would call, and also, asked for prices on certain leather. The letter was returned with the indorsement, "We refer you to our letter of June 26, 1914. McKay Leather Co." The court, in effect, instructed the jury that, if respondent repudiated the contract without just or legal cause, the appellants could treat such repudiation as putting an end to the contract, and if such repudiation resulted in damage to appellants "that in considering the amount of such damage they could allow as damages the profits that would have been realized during the full term of the contract by carrying it out," and for the purpose of ascertaining the same could consider "the profits which the plaintiffs had made under the contract before the breach." The court refused respondent's request that the jury be instructed that the recovery must be limited to commissions earned under the contract.

As the appellants did not agree to give all or any definite portion of their time to respondent's business, it was wholly optional with them whether or not they would endeavor to secure orders for respondent. Appellants' commissions were to be based upon sales actually made. The sales made were not only dependent upon the effort put forth by the plaintiffs, but also upon the number of other agents of defendant in the field competing with the plaintiffs, and as well upon the condition of the market. The case differs materially from an exclusive agency. In the case of an exclusive agency the loss suffered by the wrongfully discharged agent has been "measured by the sales actually made in the territory in which the agent had exclusive authority to sell" (*Schiffman* v. *Peerless Motor Car Co.*, 13 Cal. App. 600, [110 Pac. 460]), or by the loss of profits. (*Bredemeier* v. *Pacific Supply Co.*, 64 Or. 576, [131 Pac. 312).] In Corpus Juris, volume 2, page 791,

the rule is thus stated: "The measure of damages to which an
exclusive agent is entitled where the principal, in violation of
his contract, sells his goods in the agent's territory, is the
actual loss suffered by the latter, and that ordinarily is the
commission, which would have accrued to him if he had made
the sales in person. Speculative damages are not recoverable.
Thus, where the compensation of the agent is a commission on
sales made by him, damages on the basis of the suppositive sales
are not recoverable, unless it is shown that the sales would in
fact have been made by the agent." In the case of *Parke* v.
*Frank*, 75 Cal. 364, [17 Pac. 427], this court, in determining
the measure of damages in a case of a breach of an agency con-
tract, said: "The plaintiffs (the agents) very properly made
no effort to establish *the profits they might have made,* during
any definite period, had defendant complied with his contract.
*From the nature of the case such damages must have been
purely speculative.*" To the same effect see *Beck* v. *West*, 87
Ala. 213, [6 South. 70], and *Washburn* v. *Hubbard*, 6 Lans.
(N. Y.) 11. In the case of *McConnell* v. *Corona City Water
Co.*, 149 Cal. 60, [8 L. R. A. (N. S.) 1171, 85 Pac. 929], the
question of future profits as an element of damage for breach
of contract is discussed. The contract was for driving a
tunnel. It was held that the profits to be made in driving the
remaining portion of the tunnel were properly allowed, based
upon the profits made up to the time of the breach. After
stating the general rule that prospective profits are too specu-
lative and remote to justify an award, it is said: "Such is the
undoubted rule, but it is to be noted that this is not an objec-
tion to the inclusion of profits as a proper element of dam-
ages, but is a declaration merely that when they are too
speculative and remote to be capable of anything like reason-
able ascertainment, when they are collateral merely and do
not arise directly or by natural consequence out of the tort
complained of, they cease to become a proper element in
the admeasurement of damages. No one may contest the
soundness of this principle, but the converse of it is equally
true, that where prospective profits are not too speculative
and remote, where they do arise directly and as a natural
consequence out of the injury, they are always allowed as
an element of damage." In the instant case as to the dam-
age suffered by the plaintiffs by reason of the refusal to
further recognize them as agents, the profits to be realized

as commissions on purely suppositive sales, were under the circumstances too speculative to justify a recovery, but the contract provided a commission on sales made to certain named dealers, whether made directly or by reason of the plaintiffs' agency, and we think that the commissions on such sales are sufficiently certain to justify a recovery thereof. While not strictly an exclusive agency, it is in some respects even more definite and certain. The respondent claims, however, that there was nothing in the contract to prevent other agents appointed by it from soliciting the trade of these named dealers, and that sales made by such other agents of defendant ought not to be considered in estimating profits. It may be that some of the orders given by such dealers would have been secured by other agents, but, as was said in the case of *McConnell* v. *Corona City Water Co.*, *supra,* "as these were matters which could not be determined except by a completion of the contract, which defendant's conduct had prohibited, the court was justified in accepting the evidence, which under the circumstances was the best and most convincing that could be offered."

Since the trial the term of the agency has fully expired, and the damages actually suffered can now be more certainly ascertained by the proof of sales actually made to the designated dealers.

Order affirmed.

Melvin, J., and Lorigan, J., concurred.