**Farida K. WANIS, Appellant,**

v.

**Cornelis ZWENNES, Appellee.**

**No. 9320.**

District of Columbia Court of Appeals.

Argued July 20, 1976.

Decided Oct. 1, 1976.

Jay S. Weiss, Washington, D. C., for appellant.

John F. Mahoney, Jr., Washington, D. C., for appellee.

Before KELLY and HARRIS, Associate Judges, and HOOD, Chief Judge, Retired.

PER CURIAM.

In her action against appellee for assault and battery, appellant sought both actual and punitive damages. At trial appellee argued that the evidence did not warrant submission to the jury of the issue of punitive damages. The trial court first indicated agreement with appellee but later decided the issue should be put to the jury. The jury awarded appellant compensatory damages of $1093 and punitive damages of $10,000. On posttrial motion, the trial court set aside the award of punitive damages,[1] and the only question on this appeal is whether appellant's evidence entitled her to have the issue of punitive damages submitted to the jury.[2]

Appellant, an unmarried woman, 42 years of age and a native of Brazil, had a male friend named Franz Poschko, a house painter. Poschko had done some painting for appellee at his Connecticut Avenue jewelry store, and appellant first met appellee at his store when she went there with Poschko whom appellee had engaged to do some painting at his home in Virginia. Thereafter, on three occasions appellant accompanied her friend to appellee's home. She has no business relations with appellee and her trips to appellee's home apparently were solely for the purpose of being with her friend Poschko. The last trip there was to pick up some brushes and other painting equipment Poschko had stored in appellee's garage. This was necessary because appellee had become dissatisfied with Poschko's work and had ordered him to quit. Two days later appellant went to appellee's jewelry store, and there, according to appellant, whose version the jury evidently accepted, the assault occurred.

When appellant entered the store, no other customers were there and appellee and his wife were on the balcony. The wife came down and appellant said she wished to purchase a gold chain. The wife showed appellant no chains and very promptly told her "you are a trouble maker, I do not want any business with you." Appellee then came down from the balcony and told appellant, "Get out of my store or I call the police." When she did not immediately leave, appellee "grabbed me and throw me out." Appellant sought a police officer, told him appellee had "grabbed" her, and appellant asked the officer what right appellee had "to put his hand on me." On cross-examination the appellant described the assault in this manner: He "grabbed me and pushed me out."[3]

As a result of the assault, appellant had marks and fingernail scratches on her shoulder. Because of the scratches and pain in her shoulder she went to a hospital emergency room for treatment. Later she went to a doctor who recommended she go to an orthopedic surgeon. The latter gave her various treatments. He testified that her pains were due to degenerative disc disease in the cervical spine with nerve root irritation, that this condition existed long prior to the assault, but that the assault was sufficient to irritate the condition.

Appellant testified to medical expenses and loss of income (mainly loss of unemployment compensation because of inability to work) of approximately $1100, and it

---

1. There is some confusion in the record as to the exact nature of the trial court's action. It first announced it was ordering a "remittitur in the case of $10,000" and directed the clerk to make such entry, but when appellant's counsel inquired if appellant had the choice of rejecting the remittitur and accepting a new trial, the court replied that appellant had no such option, that "I am doing this on the basis that there should not have been punitive damages awarded."

2. Appellant's brief suggests that appellee failed to object to submitting the issue of punitive damages to the jury, but the record clearly shows otherwise.

3. Appellee and his wife both denied that appellee assaulted appellant or in any manner touched her.

was approximately this amount the jury awarded as compensatory damages.

 It has been said that punitive damages are not favored,[4] but the rule is well-established in this jurisdiction that a jury may assess punitive damages in the proper case.[5] What is a proper case is a question of law and an appellate court will set aside an award of punitive damages where it appears from the record that the evidence did not warrant submitting the issue of punitive damages to the jury.[6]

Punitive damages are not allowable in every case of assault and battery. They are allowable only where there is evidence of actual malice, wanton conduct, deliberate violence, or intent to injure.[7] Our review of the evidence convinces us that it was not of the character necessary to support an award of punitive damages.

In the first place it should be noted that appellee did not seek out appellant. She went to his store ostensibly to buy a gold chain, although she knew he had a few days earlier discharged her friend because of unsatisfactory work. Appellee's wife and appellee both promptly informed appellant that her presence in the store was not desired. Appellant did not promptly leave, for she testified she was in the store approximately 15 minutes. When she did not leave, appellee grabbed her by the shoulder and pushed her through the doorway. He did not push her to the ground. He did not strike her. His actions did not evidence an intent to injure her. The assault did not take place in the presence of members of the public, as no one else was in the store at the time. The assault was neither vicious nor violent. Appellant's injuries appear to have resulted from the aggravation of a previously existing condition of which appellee was unaware.

It is our opinion that the assault was not accompanied by that "evil motive, actual malice, deliberate violence or oppression"[8] necessary to sustain an award of punitive damages and that the trial court correctly set aside such award.

*Affirmed.*

---

4. *See Price v. Griffin*, D.C.App., 359 A.2d 582 (1976), and cases there cited.

5. *See, e. g., Franklin Investment Co. v. Homburg*, D.C.App., 252 A.2d 95 (1969); *Afro-American Publishing Co. v. Jaffe*, 125 U.S. App.D.C. 70, 366 F.2d 649 (1966).

6. *See, e. g., Riggs National Bank v. Price*, D.C.App., 359 A.2d 25 (1976); *Mills v. Levine*, 98 U.S.App.D.C. 137, 233 F.2d 16,

*cert. denied*, 352 U.S. 858, 77 S.Ct. 86, 1 L.Ed.2d 67 (1956).

7. *Montgomery Ward & Co. v. Cliser*, 267 Md. 406, 298 A.2d 16 (1972).

8. *Price v. Griffin, supra*, quoting from *Black v. Sheraton Corp. of America*, 47 F.R.D. 263, 271 (D.D.C.1969).